UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CATHERINE NOBLE BEYER,

                Plaintiff,

    v.                                              Case No. 22-cv-1211-bhl

KILOLO KIJAKAZI,
Acting Commissioner of Social Security Administration,

                Defendant.

## DECISION AND ORDER

Plaintiff Catherine Noble Beyer seeks judicial review of the final decision of the Acting Commissioner of the Social Security Administration denying her claim for Disability Insurance Benefits (DIB) under Title II the Social Security Act, 42 U.S.C. § 405(g). For the reasons set forth below, the Acting Commissioner's decision will be affirmed.

## PROCEDURAL BACKGROUND

Noble Beyer applied for DIB on June 18, 2020, alleging a disability onset date of May 25, 2015. (ECF No. 7-2 at 14.) Noble Beyer's claims were denied initially and on reconsideration, so she requested a hearing before an administrative law judge (ALJ). (*Id.*) The ALJ held a hearing on March 14, 2022. (*Id.*) At the hearing, Noble Beyer amended her alleged onset date to May 1, 2019. (*Id.*) In a decision dated April 5, 2022, the ALJ found Noble Beyer not disabled. (*Id.* at 27.) Noble Beyer requested review of the ALJ's decision and, on August 12, 2022, the Appeals Council denied Noble Beyer's request for review. (*Id.* at 2.) On October 14, 2022, Noble Beyer then filed this civil action. (ECF No. 1.)

## FACTUAL BACKGROUND

Noble Beyer was born on December 13, 1974, and was 47 years old as of the hearing date. (ECF No. 7-2 at 26, 43.) She has a college degree, is married, and taught history at the University of Wisconsin, in Green Bay. (*Id.* at 43; ECF No. 7-7 at 58.) Noble Beyer reports she was diagnosed with fibromyalgia at the age of eighteen. (ECF No. 7-9 at 128.) She was injured in a May 2015 bicycle accident, fracturing both her right arm (at the elbow) and her right hip. (*Id.* at

132.) On December 17, 2015, she had a total hip arthroplasty. (*Id*. at 128.) Noble Beyer last worked part-time crafting jewelry. (ECF No. 7-2 at 43.) Prior to that, she worked as an administrative clerk and lecturer. (*Id*. at 26.)

In assessing Noble Beyer's claim for benefits, the ALJ followed the five-step sequential evaluation of disability set out by the regulations. 20 C.F.R. § 404.1520. The ALJ reviewed the medical evidence, which showed that Noble Beyer had been treated for continued pain from fibromyalgia as well as back and hip pain. The ALJ noted, however, that "treatment has been fairly limited and physical examinations show relatively good functioning." (ECF No. 7-2 at 24 (citing ECF No. 7-7 at 59; ECF No. 7-8 at 43; ECF No. 7-9 at 128–35).) The ALJ found Noble Beyer had the following severe impairments: anxiety disorder, depression/bipolar, attention deficit hyperactivity disorder, fibromyalgia, closed compression fracture in the thoracic spine, asthma, residuals of a right total hip arthroplasty, and obstructive sleep apnea. (*Id*. at 16.) The ALJ also determined that Noble Beyer had the residual functional capacity (RFC) to perform light work but with limitations that included never climb ladders, ropes or scaffolds; occasionally climb ramps and stairs; balance; stoop; kneel, crouch and crawl; occasional exposure to unprotected heights and dangerous moving machinery; is able to understand and remember instructions of up to two steps; has the concentration, persistence, and pace to perform routine tasks for up to two hour periods; must have access to regularly scheduled breaks; is limited to occasion interaction (defined as superficial) with the public, co-workers, and supervisors; and is limited to occasional changes within a routine work setting. (*Id*. at 20.) In crafting the RFC, the ALJ relied on the findings of state agency consultants Marc Young, M.D. and Mina Khorshidi, M.D., who both opined that Noble Beyer was capable of light exertional work with no additional limitations. (*Id*. at 24.) Although the ALJ found that Noble Beyer was unable to perform past relevant work, he determined she was capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (*Id*. at 27.) The ALJ therefore determined Noble Beyer was not disabled. (*Id*.)

## LEGAL STANDARD

The Acting Commissioner's final decision on the denial of benefits will be upheld "if the ALJ applied the correct legal standards and supported his decision with substantial evidence." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) (citing 42 U.S.C. §405(g)). Substantial evidence is not conclusive evidence; it is merely "such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* In rendering a decision, the ALJ "must build a logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence." *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013) (citation omitted).

A reviewing court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). Judicial review is limited to the rationales offered by the ALJ. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943)).

## ANALYSIS

Noble Beyer challenges three aspects of the ALJ's decision, arguing: (1) the ALJ failed to properly accommodate Noble Beyer's need to nap; (2) the ALJ failed to properly assess Noble Beyer's ability to stay on task; and (3) the ALJ's symptom evaluation violated Social Security Ruling (SSR) 16-3p. Because none of these complaints establishes a basis for remand, the Acting Commissioner's decision will be affirmed.

**I.      The ALJ Reasonably Relied on the Limitations Recommended by State Agency Physicians and Adequately Addressed Noble Beyer's Claimed Need to Nap.**

In determining Noble Beyer's RFC, the ALJ considered and relied on the opinions of state-agency doctors and psychologists, including Dr. Young and Dr. Khorshidi. (ECF No. 7-2 at 24 (citing ECF No. 7-3 at 3–30).). On December 28, 2020, Dr. Young opined that a light work restriction was appropriate as there was no evidence to support a sedentary work restriction. (ECF No. 7-3 at 7.) Dr. Young's physical residual functional capacity assessment acknowledged that Noble Beyer "endorses significant fatigue," but also confirmed she had good range of motion, normal neurological findings and ambulates well without an assistive device. (*Id.* at 13, 14.) On October 22, 2021, Dr. Khorshidi similarly determined that Noble Beyer could occasionally lift twenty pounds, frequently lift or carry ten pounds, stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday, and sit for a total of about six hours in an eight-hour workday, with normal breaks. (*Id.* at 26.) Dr. Khorshidi found no additional limitations. (*Id.*) The ALJ found that Noble Beyer's impairments were limiting but not work preclusive. (ECF No. 7-2 at 24.) Based on the record, the ALJ adopted an RFC that limited Noble Beyer to light work but with additional postural and environmental limitations. (*Id.* at 25–26.)

Noble Beyer contends that the ALJ erred by not including a further limitation requiring her to nap to manage her fatigue. (ECF No. 11 at 4–7.) Dr. Young and Dr. Khorshidi, the state-agency reviewing doctors and psychologists considered Noble Beyer's allegations of fatigue in issuing their underlying opinions as to her limitations but did not impose such a limitation. The AJL was thus fully justified in adopting an RFC based on the limitations contained in those opinions. The ALJ's RFC determination accounts for Noble Beyer's statements about napping needs by incorporating the limitations imposed by the state agency doctors and psychologists who considered Noble Beyer's reported symptoms. (ECF No. 7-2 at 18– 20.)

Moreover, as the Acting Commissioner notes, no physician has suggested any limitations greater than those set forth in the opinions of Dr. Young and Dr. Khorshidi. (ECF No. 17 at 5.) "There is no error when there is 'no doctor's opinion contained in the record [that] indicated greater limitations than those found by the ALJ.'" *Best v. Berryhill*, 730 F. App'x 380, 382 (7th Cir. 2018) (alteration in original) (quoting *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004); *Dudley v. Berryhill*, 773 F. App'x 838, 843 (7th Cir. 2019) ("When no doctor's opinion indicates greater limitations than those found by the ALJ, there is no error."). Here, the plaintiff did not identify any medical evidence that compelled additional limitations. The plaintiff "bears the burden to prove she is disabled by producing medical evidence." *Gedatus*, 994 F.3d at 905; *see also* 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone by conclusive evidence of disability . . . ."); 20 C.F.R. § 404.1529(a) ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled.").

Noble Beyer also argues that the ALJ violated the requirements of SSR 96-8p by failing to explain how frequent fatigue was accommodated by a limitation on exposure to environmental and postural activities or 1–2 step instructions. (ECF No. 11 at 4–5.) According to this Ruling: "The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8p, 1996 WL 374184, *7 (July 2, 1996). The ALJ, however, did not err. He recognized that Noble Beyer claimed to experience frequent exhaustion and napped regularly. He also acknowledged her obstructive sleep apnea and noted she had been prescribed a CPAP to manage this condition. The ALJ discussed how Noble Beyer had, in 2018 after her first use of the CPAP, "reported generally waking feeling pretty refreshed" and later opined "there is nothing in the records that support[s] that [this] condition[] cause[s] her significant limitations." (ECF No.

7-2 at 23.) After considering the evidence, the ALJ found that "the clinical findings, physical examination findings, and mental status evaluations do not support her limitations beyond those indicated in the residual functional capacity." (*Id.* at 24.) In crafting the RFC, the ALJ assessed more limits than any physician did and thus the ALJ did not violate narrative requirements of SSR 96-8p that residual functional capacity assessment include a discussion a why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence in connection with evaluation of Noble Beyer's alleged fatigue and need to nap. Noble Beyer did not provide an opinion from any physician setting such limits or another limits, greater than those set by the ALJ. Given this record and the case law, the ALJ did not commit error

## II. The ALJ Properly Assessed the Claimant's Ability to Stay On-Task.

In fashioning the RFC, the ALJ found that Noble Beyer had mental health impairments with moderate deficits in concentrating, persisting, or maintaining pace. The ALJ thus limited her to maintaining concentration, persistence, and pace for routine tasks for up to two-hour periods, with access to regularly scheduled breaks. (ECF No. 7-2 at 24.) The ALJ also limited her to "only 1-2 step instructions." (*Id.* at 25.)

In support of these findings, the ALJ relied in part on record evidence from state agency psychologists Catherine Bard, Psy.D. and Russell Phillips, Psy.D., who both opined that Noble Beyer had moderate limitations in concentrating, persisting or maintaining pace. (*Id.* (citing ECF No. 7-3 at 3–30).) Dr. Bard opined that the claimant's sustained concentration and persistence capacities allowed her "to carry out short and simple 1-2 step instructions." (ECF No. 7-3 at 16.) Dr. Phillips opined that the claimant "can maintain attention for two hours at a time and persist at simple tasks over eight- and forty-hour period with normal supervision." (*Id.* at 28.) The ALJ found these opinions partially persuasive but found that the claimant's mental health impairments caused more than mild limitations in her daily functioning. (ECF No. 7-2 at 25.) The RFC limited the claimant to understanding and remembering instructions of up to two steps and performing routine tasks for up to two-hour periods. (ECF No. 7-2 at 20.) And, she must have access to regularly scheduled breaks. (*Id.*)

Noble Beyer argues that the RFC's concentration-related limitations did not adequately capture her symptoms and, in fact, "are not limitations at all." (ECF No. 11 at 7.) She further contends the ALJ erred by failing to provide a single additional break or allowance for off-task

time beyond those that are provided to all employees—typically two 15-minute breaks and one 30-minute lunch usually spread about two hours apart.  (*Id*.)  Contrary to Noble Beyer's insistence, and as argued by the Acting Commissioner, the limitations adopted by the ALJ are indeed limitations.  (ECF No. 17 at 10.)  A person with no limitations might well be able to work longer than two-hour periods even if permitted breaks every two hours as is typical in the ordinary workday.  Moreover, the limitations adopted in the RFC are the ones proposed by Dr. Phillips, the state agency psychologist who opined at the reconsideration stage.  (ECF No. 7-3 at 28 (noting that "claimant can maintain attention for two hours at a time and persist at simple tasks over eight- and forty-hour periods with normal supervision").)

Citing *Pavlicek v. Saul*, 994 F.3d 777 (7th Cir. 2021), the Acting Commissioner argues the ALJ properly accounted for Noble Beyer's ability to concentrate.  In *Pavlicek*, the Court of Appeals held that an ALJ had properly weighed medical opinion evidence where the narrative portion of the medical assessment was consistent with the moderate concentration, persistence, and pace checklist rating.  994 F.3d at 783.  The Seventh Circuit explained that the regulations define "moderate" as "fair" and "a 'moderate' limitation in performing at a consistent pace seems consistent with the ability to perform simple, repetitive tasks at a consistent pace."  *Id*.  The state agency psychologist had indicated a moderate limitation in areas relating to maintaining concentration and pace in the checklist portion of his completed form, and elaborated in the narrative portion of the form, writing that the claimant "could perform at a consistent pace particularly if . . . engaged in [] simple, repetitive tasks."  *Id.* (internal quotations omitted).  The assessment was also consistent with other evidence in the record that the claimant could carry out simple instructions and make simple decisions with no significant limitations.  *Id.; see also Urbanek v. Saul*, 796 F. App'x 910, 914 (7th Cir. 2019) (noting that generic limitations, including limiting a claimant to simple tasks, may properly account for moderate limitations if they adequately account for the claimant's demonstrated psychological symptoms as found in the record); *Pytlewski v. Saul*, 791 F. App'x 611, 615–16 (7th Cir. 2019) (holding that the state agency psychologists' narrative summaries that the claimant could perform simple repetitive tasks were consistent with "moderately limited" in maintaining attention and concentration for extended periods).

A moderate limitation in concentration, persistence, and pace may be accommodated by limiting a claimant to routine or simple work, if that determination is supported by logical

evidence. In this case, the ALJ relied on two state agency psychologists who opined in their narratives that the claimant can maintain attention for two hours at a time and persist at simple tasks over eight and forty-hour periods with normal supervision,(ECF No. 7-3 at 28), and "is able to carry out short and simple 1-2 step instructions." (*Id.* at 16.) "[T]he ALJ was only required to incorporate limitations that he found supported by the evidence." *Alvarado v. Colvin*, 836 F.3d 744, 751 (7th Cir. 2016). There is no other medical opinion in the record that suggests Noble Beyer is more limited than the ALJ found her to be. The ALJ's decision thus built the requisite logical bridge between the state agency psychologists' opinions and his RFC assessment and will not be disturbed by this Court.

## II.    The ALJ Properly Evaluated Claimant's Subjective Symptoms.

When determining the existence or extent of a disability, SSR 16-3p requires ALJs to consider a claimant's "own description or statement of . . . her physical or mental impairment(s)." SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017). This is a two-step process. First, the ALJ considers "whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms." *Id.* at *3. If there is such an impairment, then the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id.* "However, statements about [a claimant's] pain or other symptoms will not alone establish that [a claimant is] disabled." 29 C.F.R. 404.1529(a). Because an ALJ "is in the best position" to make this credibility determination, reviewing courts will reverse it only if "patently wrong." *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009).

After listening to the claimant's testimony and reviewing the overall record, the ALJ found that the clinical findings, physical examination findings, and mental status evaluation did not support Noble Beyer's limitations beyond those indicated in the RFC. (ECF No. 7-2 at 24.) The ALJ noted that Noble Beyer was diagnosed with several mental health impairments and "[w]hile she presented at some appointments as depressed, anxious, or stressed, there are also several appointments where her mental status examinations are fairly unremarkable." (ECF No. 7-2 at 23 (citing ECF No. 7-7 at 57, 62, 67; ECF No. 7-8 at 14, 21, 29, 37, 43; ECF No. 7-9 at 120).) The ALJ acknowledged treatment notes that indicated Noble Beyer "was doing pretty well with her anxiety, but still having some difficulty making decisions." (*Id.* (citing ECF No. 7-7 at 56).) This treatment note further documented Noble Beyer's "mild depression" related to her lacking a sense

of purpose. (*Id.*) A November 2019 treatment note indicated Noble Beyer's bipolar was controlled on medication. (*Id.* (citing ECF No. 7-8 at 29).) In April of 2020, Noble Beyer reported that she had "actually been pretty good" and was practicing martial arts outside. (*Id.* citing (ECF No. 7-7 at 66).) In June 2020, Noble Beyer reported an increase in her symptoms largely related to COVID restrictions and indicated the medication lorazepam was very helpful. (*Id.* citing (ECF No. 7-10 at 146).)

Nobel Beyer contends that the ALJ's reliance on several unremarkable mental status examinations mischaracterizes the record and cites mental status examinations reflecting decreased eye contact, dysphoric, anxious and irritable mood, restricted range of affect, negative thought process and other mood abnormalities. (ECF No. 11 at 14.) The same treatment notes cited by Noble Beyer, however, also consistently show normal speech and thought process, intact judgment and insight, grossly intact cognition, normal attention during examination interview, and fund of knowledge consistent with Noble Beyer's level of education. (ECF No. 7-7 at 45, 57, 62; ECF No. 7-8 at 54, 617; ECF No. 7-9 at 120, 129, 292–93, 296–97, 299, 309–10.) The ALJ noted that Noble Beyer was diagnosed with anxiety disorder, depression/bipolar and attention deficit disorder but determined that her statements regarding limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record, including treatment notes. This was a reasonable conclusion based on the record and not one this Court can disturb on appeal. *See Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) (while an ALJ "may not ignore an entire line of evidence that is contrary to the ruling," he does not need to "discuss every piece of evidence in the record").

Nobel Beyer also contends that the ALJ did not weigh her daily activities in assessing her subjective allegations. The Court disagrees. The ALJ noted that Noble Beyer had difficulty completing household chores due to pain, depression, and fatigue. (ECF No. 7-2 at 20.) The ALJ further noted that Noble Beyer was able to drive and grocery shop and her hobbies include role playing and practicing taekwondo where she can take breaks when necessary. (*Id.* at 22.) "On the worst days [Noble Beyer] can barely get out of bed" and on a good day, she tries to be more productive. (*Id.*) The ALJ considered Noble Beyer's activities as required by agency regulations. *See* 20 C.F.R. § 404.1529(a).

The ALJ ultimately concluded that the "record fails to fully substantiate the claimant's allegations of disabling symptoms." (ECF No. 7-2 at 23.) While an ALJ cannot deny disability

"solely because the available objective medical evidence does not substantiate [the claimant's] statements," 20 C.F.R. § 404.1529(c)(2), here, the ALJ properly considered the objective evidence along with a number of other factors named in the regulations, § 404.1529(c)(2)–(4), such as Noble Beyer's course of treatment, observations during physical examinations, therapy notes, and daily activities. "Subjective statements by claimants as to pain or other symptoms are not alone conclusive evidence of disability and must be supported by other objective evidence." *Grotts v. Kijakazi,* 27 F.4th 1273, 1278 (7th Cir. 2022); *see also Mitze v. Colvin*, 782 F.3d 879, 882 (7th Cir. 2015) ("The ALJ was entitled to find that the plaintiff, although she may well suffer from chronic pain, is capable of full-time employment and therefore not totally disabled.")

Again, a Court should disturb an ALJ's credibility finding only if it is "patently wrong." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). And a credibility finding is not "patently wrong" if the ALJ discredited the claimant's subjective testimony based on "many specific reasons supported by the evidence." *See Hall v. Berryhill*, 906 F.3d 640, 644 (7th Cir. 2018). Court review is deferential and a reviewing court "will not reweigh the evidence or substitute [the court's] judgment for that of the ALJ." *L.D.R. v. Berryhill*, 920 F.3d 1147, 1151–52 (7th Cir. 2019) (citation omitted); *see also Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020) ("[E]ven if reasonable minds could differ on the ALJ's rejection of Zoch's testimony, we will not reweigh evidence or substitute our judgment for the ALJ's."). Because the ALJ's analysis was not "patently wrong," there is no reason for remand.

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that, pursuant to sentence four of 42 U.S.C. §405(g), the decision of the Acting Commissioner of the Social Security Administration is **AFFIRMED**, and the case is **dismissed**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on December 20, 2023.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge